**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MARTY S.,**

                              **Plaintiff,**

**v.**
                                                            **20-CV-932**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

**DECISION AND ORDER**

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. No. 17.  Marty S. ("Plaintiff"), who is represented by counsel, brings this

action pursuant to the Social Security Act ("the Act") seeking review of the final decision

of the Commissioner of Social Security ("the Commissioner") denying her application for

benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 13,

15.  For the following reasons, Plaintiff's motion (Dkt. No. 13) is denied, and the

Commissioner's motion (Dkt. No. 15) is granted.

**BACKGROUND**

        On January 24, 2017, Plaintiff filed for a period of disability and Disability

Insurance Benefits ("DIB") alleging that she became disabled on February 26, 2016, by

chronic lumbar pain, spinal stenosis, bipolar disorder, hypothyroidism, diabetes,

Addison's Disease, and Fibromyalgia.  Tr. at 254, 258.[1]  Plaintiff's claim was denied at

the initial level, and she requested review.  Tr. at 149-50.  Administrative Law Judge

Erick Ecklund ("the ALJ") conducted a hearing on January 4, 2017.  Tr. at 63-117.

Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 63-

117.  The ALJ issued an unfavorable decision on May 7, 2019.  Tr. at 36-59.  Plaintiff

exhausted her administrative remedies and commenced this action before this Court.

Dkt. No. 1.


## LEGAL STANDARD

**Disability Determination**

> To receive DIB under the Act, a claimant must furnish evidence

establishing that she was unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),

(d)(5)(A).  Moreover, for Plaintiff to qualify for DIB, her disability must have commenced

at a time when she met the insured status requirements as provided by the Act.  42

U.S.C. § 423(a)(1)(A) and (c)(1); 20 C.F.R. §§ 404.130, 404.315(a).  Here, Plaintiff only

met these requirements through September 30, 2017.  Tr. 41.


> The function of deciding whether a person is under a disability within the

meaning of the Act belongs to the Commissioner.  20 C.F.R. § 404.1527(d).  The

Commissioner has established a five-step sequential evaluation for adjudication of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket Nos. 10, 11, and 12.

disability claims, set forth at 20 C.F.R. § 404.1520.  If a claimant is not disabled at any

point of the sequential analysis, the claim will not be reviewed any further.  20 C.F.R. §

404.1520(a).  The claimant bears the burden at steps one through four of the analysis of

showing that she had a severe impairment(s) that prevented her from performing her

past relevant work.  *See* 20 C.F.R. §§ 404.1520(c)-(f), 404.1560(b); *Diaz v. Shalala*, 59

F.3d 307, 315 (2d Cir. 1995) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.

1982)).  Only if the claimant cannot return to her past relevant work does the burden

shift to the Commissioner at the fifth step to show that the claimant can perform other

work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(g);

*Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Berry*, 675 F.2d at 467.3

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of

the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. § 405(g).  Section 405(g) limits the scope of the Court's review to

two inquiries:  whether the Commissioner's conclusions were based upon an erroneous

legal standard, and whether the Commissioner's findings were supported by substantial

evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-

106 (2d Cir. 2003).

Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue*, 569

F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation

omitted).   The substantial evidence standard of review is a very deferential standard,
even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683
F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by
substantial evidence, the Court's task is "'to examine the entire record, including
contradictory evidence and evidence from which conflicting inferences can be drawn.'"
*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d
1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's
determination, the decision must be upheld, even if there is also substantial evidence
for the plaintiff's position.  *See Perez*, 77 F.3d at 46-47; *Conlin ex rel. N.T.C.B. v.
Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is
susceptible to more than one rational interpretation, the Commissioner's conclusion
must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process.
*Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008)
(detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in
substantial gainful activity since her alleged onset date of February 26, 2016, through
her date last insured, September 30, 2017.  Tr. at 41.  The ALJ concluded at step two
that through the date last insured, Plaintiff suffered from the following severe
impairments:  degenerative disc disease of the lumbar spine; disc bulge of the cervical

spine at C5-C6 and C6-C7; carpal tunnel syndrome of the right upper extremity; obesity; anxiety; and bipolar/depressive disorder.  Tr. at 42.  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 1.02 (Major Dysfunction of a Joint); Listing 1.04 (Disorders of the Spine); Listing 11.14 (Peripheral Neuropathy); Listing 12.04 (Depressive, Bipolar, and Related Disorders), and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders).  Tr. at 42-45.

The ALJ found that through the date last insured, Plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except she could never crawl or climb ladders, ropes, or scaffolds; only occasionally balance, stoop, kneel, or crouch; could frequently bend, rotate, or flex her neck; only occasionally operate foot controls with her bilateral lower extremities; frequently perform pushing and pulling her bilateral lower extremities; frequently handle with her right upper extremity; never tolerate exposure to extreme cold, excessive vibration, or unprotected heights; never operate moving machinery; and was limited to performing simple, unskilled work. Tr. at 45-51.

The ALJ concluded that Plaintiff was unable to perform her past relevant work as a licensed practical nurse, case manager, or administrative assistant.  Tr. at 51-52.  Relying on the VE's testimony, the ALJ found that during the relevant period, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the jobs of printer circuit board screener, bench worker, and assembler.  Tr. at 52-53.  Accordingly, the ALJ determined that Plaintiff had not been

under a disability at any time from February 26, 2016, through September 30, 2017.  Tr. at 53.

## Judgment on the Pleadings

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 13, 15.  Plaintiff raises one challenge to the ALJ's decision:  that the ALJ failed to give good reasons for rejecting the opinions of her treating physician, Dr. Alex Selioutski.  Dkt. No. 13-1, p. 11.  For the following reasons, this Court finds that remand is not warranted.

## Dr. Selioutski's Treatment Records and Opinions

Dr. Selioutski began treating Plaintiff on a monthly basis for her low back and neck pain in 2015, prior to the relevant period.  Tr. at 567-727, 728-809, 850-1167. Dr. Selioutski examined Plaintiff in February 2016, after her alleged onset date.  Tr. at 637.  At that time, Plaintiff reported that her pain rated 6 out of 10 on the pain scale; that medication, chiropractic adjustments, and home exercise provided moderate relief of her symptoms; and that she was working to improve her exercise routine.  Tr. at 637. On exam, Plaintiff had a normal gait; midline tenderness and spasm in the neck with mild limitations in mobility; mild spasms with moderate limitations in mobility of the lumbar spine; and positive straight leg raise.  Tr. at 639.  Dr. Selioutski continued Plaintiff's current medication and treatment regimens and noted there were "no red flags for potentially serious underlying conditions."  Tr. at 639.

Dr. Seloutski made similar clinical findings at Plaintiff's monthly medication management appointments in March 2016 (Tr. 641-45, 647-51), April 2016 (Tr. 660-63), May 2016 (Tr. 664-68, 669-72), June 2016 (Tr. 678-83), July 2016 (Tr. 690-95), August 2016 (Tr. 696-701), September 2016 (Tr. 702-707, 708-714), October 2016 (Tr. 715-20), November 2016 (Tr. 728-33), December 2016 (Tr. 734-39), January 2017 (Tr. 740-45), February 2017 (Tr. 746-51, 1109-1113), March 2017 (Tr. 940-45), April 2017 (Tr. 1098-1103), May 2017 (Tr. 922-27, 934-39), and June 2017 (Tr. 916-21).  These clinical findings, which did not indicate disabling impairments, continued through the end of the relevant period.  Tr. at 901.

During her July 2017 medication management appointment, Plaintiff reported her pain was under reasonable control, and she believed she would be able to return to part-time work.  Tr. at 910-915.  At Plaintiff's August 2017 annual physical, Dr. Selioutski's physician assistant noted that Plaintiff's lumbar condition was stable, and her cervicalgia was stable and controlled.  Tr. at 851-857.  Strength was full in Plaintiff's spine and all extremities, and sensation was intact.  Tr. at 854.  Later that month, Plaintiff reported that she had started working, and despite some increase in pain, she was "very satisfied with being able to return to the workforce."  Tr. at 906.  At her September 2017 medication management appointment, Plaintiff exhibited normal gait, full strength in the left hand, and nearly full strength in the right hand, with limited mobility in the neck and back.  Tr. at 899-902.  Dr. Selioutski noted no significant changes to Plaintiff's condition and observed that she was able to work with medications.  Tr. at 900, 902.

The October 2017 EMG requested by Dr. Selioutski (Tr. at 902) yielded findings consistent with right median neuropathy to the distal wrist (consistent with carpal tunnel syndrome) that was mild in degree.  Tr. at 1153-55.  In December 2017, shortly after the end of the relevant period, Plaintiff reported to Dr. Selioutski that although her pain was significant, her current medication regimen allowed her to remain active and perform most activities of daily living.  Tr. at 888.  The subsequent MRI of Plaintiff's cervical spine (February 2018) was normal.  Tr. at 1152.

Dr. Selioutski opined in July 2016, February 2017, and March 2018 that Plaintiff should not perform any physically demanding jobs and would have moderate limitations in sitting.  Tr. at 1172, 1174-1175, 1177.  He subsequently opined in May 2018 that Plaintiff could not work in any capacity and would have moderate limitations in sitting, among other things.  Tr. at 1170.  In a Physical Medical Source Statement form completed December 2018, Dr. Selioutski opined that Plaintiff could sit for 20 minutes at a time and about four hours in total throughout an eight-hour workday, would require unscheduled breaks, would be off-task 25% or more of the time, and would be absent more than four days a month.   Tr. at 1193-96.

**Treating Physician Rule**

Prior to recent changes, "[t]he SSA recognize[d] a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (*citing Green–Younger, v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).  Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that

opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106.

An ALJ may discount a treating physician's opinion if it does not meet this standard but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").  The ALJ must consider several factors in determining how much weight to give a treating physician's opinion including "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129 (quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).[2]

Plaintiff argues that the ALJ improperly assigned less weight to the more restrictive opinions of Dr. Selioutski, including his assessments of moderate limitations on Plaintiff's ability to sit, without offering "good reasons" as required by the treating

---

[2] This regulation applies to claims filed before March 27, 2017, like Plaintiff's.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.  Gonzalez-Cruz v. Comm'r of Soc. Sec., 294 F. Supp. 3d 164, 189 (W.D.N.Y. 2018).

physician rule.  Tr. at 50.  Specifically, Plaintiff argues that the ALJ focused only on Dr. Selioutski's 2018 opinion and did not explain why he gave the doctor's 2016 and 2017 opinions less weight.  Having reviewed the ALJ's decision, this Court finds that the ALJ provided sufficient reasons for not giving controlling weight to all of Dr. Selioutski's opinions.

The ALJ detailed the numerous opinions offered by Dr. Selioutski, including his opinion that the claimant was not capable of gainful employment in any capacity, was very limited in the ability to lift, carry, push, pull, bend and climb, and had moderate limitations in walking, standing, sitting and using her hands (Tr. at 50 citing Tr. at 1169-1170 (May 2018), 1171-1172 (March 2018), 1174-1175 (February 2017), 1176-1177 (July 2016), 1181-1182 (July 2014)), and that Plaintiff could perform less than sedentary work, would be off-task more than 25% of the time, and would miss four or more days per month (Tr. at 50 citing Tr. at 1193-1196 (December 2018)).  While the ALJ afforded less weight to the later opinion because it was outside the relevant period, he offered several other reasons for rejecting the remaining opinions.  Specifically, the ALJ concluded that "the severity of [Dr. Selioutski's] determinations [were] not consistent with the objective medical evidence"; and that his conclusions were not "consistent with the Plaintiff's own reporting of pain relief that allowed her to perform activities of daily living and work."  Tr. at 50.  The ALJ also gave less weight to the off-task and absenteeism provisions for being "not consistent with the record as a whole."  Tr. at 50.

The ALJ referred to Dr. Selioutski's opinions collectively, using the plural nouns "opinions" and "determinations," and cited several of the doctor's opinions in his analysis.  Tr. at 50 (ALJ's analysis citing Tr. at 1169-82 (indicating moderate limitations on the ability to sit); Tr. at 1193-96 (limiting Plaintiff to four hours of sitting)). The ALJ explicitly gave less weight to Dr. Selioutski's December 2018 opinion (Tr. at 1193-96) on the basis that it was "not entirely relevant to the period of adjudication."  Tr. at 50.  However, the balance of the ALJ's reasons for affording less weight clearly applied to all of Dr. Selioutski's opinions.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (holding that a reviewing court may glean the ALJ's rationale based on a reading of the decision as a whole, together with the evidence of record).

The ALJ's analysis was entirely appropriate.  The law is clear that an ALJ may properly discount a treating source opinion that is inconsistent with the other evidence.  *See Halloran*, 362 F.3d at 31 (holding that an ALJ demonstrates good reason for giving a treating source's opinion little weight where the assessment is not supported by the source's own treatment notes); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (holding that the ALJ properly discounted the treating source's opinion where the source made largely benign findings and the plaintiff's daily and recreational activities suggested greater ability than the source opined).

"[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  Here, the ALJ properly discounted all of Dr. Selioutski's opinions because they were not supported by his own examination

findings and were inconsistent with the other evidence, including the opinions of the consultative examiner Dr. Rosenberg, and the State Agency consultant Dr. Dickerson (who both opined that Plaintiff was not as restricted as Dr. Selioutski concluded), and Plaintiff's reported activities of daily living. *See Holler v. Saul*, 852 F. App'x 584 (2d Cir. 2021) (affirming where "the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions," which could be "easily underst[ood] from a review of the CAR," even though the ALJ did not explicitly discuss each of the regulatory factors for weighing opinion evidence).

Reading the decision as a whole, it is evident that the ALJ reasonably weighed all of the evidence (including Dr. Selioutski's opinions) and was more persuaded by the other, less restrictive opinions. Plaintiff argues that the opinion of a consulting examiner and a state agency consultant cannot override those of her treating physician. Under the circumstances, this court does not agree. Plaintiff's argument proceeds as if each of these opinions stands alone against Dr. Selioutski's. This is not the case. Dr. Rosenberg's and Dr. Dickerson's opinions were largely consistent with one another, and both opinions were supported by the objective medical evidence cited in each. Tr. at 50, 128-29, 828-32. Dr. Rosenberg reviewed diagnostic imaging of Plaintiff's spine, in addition to performing his own detailed examination. Tr. at 828-31. Dr. Dickerson provided a detailed explanation in support of his opinion, including a summary of the diagnostic imaging, Dr. Rosenberg's report, and Dr. Selioutski's treatment records, which noted that Plaintiff's pain symptoms were controlled. Tr. at 128-29. Under the circumstances, the ALJ appropriately afforded less weight to Dr. Selioutski's opinions (including his assessment of moderate limitations in the ability to

sit) and assigned greater weight to the opinions of Drs. Dickerson and Rosenberg (none of which specified any sitting limitations).  Tr. at 49-50.  Accordingly, there is no basis to remand this case.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (stating that "an ALJ is free to . . . choose between properly submitted medical opinions.").

Plaintiff offers no reason why the ALJ should have placed greater emphasis on Dr. Selioutski's opinion that Plaintiff was limited in her ability to sit.  Dr. Selioutski's exam records from the relevant time frame routinely showed that Plaintiff was in no acute distress and was "pleasant and comfortable."  Tr. at 567-727, 687, 728-815, 849-1167.  Dr. Selioutski mentioned a sitting limitation only once during the relevant period and then, only on a pre-printed form for the Department of Social Services.  Tr. at 1193-96.  The Second Circuit Court of Appeals has expressly held that a physician's checkmark opinion on a standardized multiple-choice form is "not particularly informative."  *Halloran*, 362 F.3d at 32; *see Emery v. Astrue*, No. 2:11-CV-248, 2012 WL 4892635, at *10 (D. Vt. Oct. 15, 2012) (the ALJ did not err in his analysis of a doctor's opinion where it was "given on a fill-in-the-blank-type form and … accompanied by little explanation…").  There was no other reference in his treatment records to Plaintiff having difficulty sitting.  Tr. at 1174-1175, 1176-1177.

To prevail in this case, Plaintiff must demonstrate that her RFC was more restricted than found by the ALJ.  *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (unpublished summary order) (stating that Plaintiff "had a duty to prove a more restrictive RFC").  Specifically, Plaintiff bears the burden to show that

she could not sit for six hours in an eight-hour workday. She has failed to do so. The ALJ properly discounted each of Dr. Selioutski's opinions pertaining to Plaintiff's ability to sit. But even assuming that the ALJ had not done so, Plaintiff has not shown that the moderate limitations that Dr. Selioutski assessed would be incompatible with sedentary work. As courts within this Circuit have repeatedly recognized, moderate limitations in sitting are not necessarily inconsistent with the ability to perform the six hours of sitting needed for sedentary work. *See Lisa P. v. Comm'r of Soc. Sec.*, No. 19-cv-1155, 2021 WL 826715, at *3-4 (W.D.N.Y. Mar. 4, 2021) (holding that "a moderate limitation in the ability to sit does not necessarily preclude a finding that the claimant can meet the sitting demands of sedentary work"); *Hill v. Berryhill*, 17-cv-6532, 2019 WL 144920, at *6 (W.D.N.Y. Jan. 9, 2019) (holding that moderate limitations in prolonged sitting are not inconsistent with sedentary work); *Josielewski v. Berryhill*, No. 1:15-CV-00728-MAT, 2018 WL 903471, at *5 (W.D.N.Y. Feb. 15, 2018) ("[T]his Court has previously held that an assessment of moderate to marked limitations for prolonged sitting is consistent with a finding that a claimant can perform sedentary work."); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 (W.D.N.Y. Feb. 25, 2015) (finding that a medical opinion stating that claimant was "moderately" limited in sitting, standing and walking was not inconsistent with the ALJ's residual functional capacity that plaintiff could sit, stand, and walk for six hours a day); *see also Halloran*, 362 F.3d at 33 (stating that "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."); *Poupore*, 566 F.3d at 306 (noting that a claimant's need to "get up and move around from time to time does not preclude his ability to perform sedentary work").

The cases cited by Plaintiff do not compel a different result.  In *Isaac S. v. Comm'r of Soc. Sec.*, No. 19-cv-6846, 2021 WL 1339450, at *4-5 (W.D.N.Y. Apr. 9, 2021), *Santiago v. Berryhill*, No. 16-cv-6459, 2017 WL 2728584, at *4 (W.D.N.Y. Jun. 26, 2017), and *Toomey v. Colvin*, 15-cv-730, 2016 WL 3766426, at *4 (W.D.N.Y. Aug. 3, 2016), the record contained objective medical findings, testimony, and/or opinion evidence credited by the ALJ which supported a limitation in prolonged sitting.  No such evidence exists in this case.  To the contrary, the evidence suggests that Plaintiff was not any more limited in her ability to sit than allowed by the RFC.  Plaintiff testified at her hearing that she was able to sit on the floor to play with her grandchildren.  Tr. at 97-100.  Dr. Selioutski's records, as well as those of her other treating sources, documented grossly normal motor strength, tone, and stability, with only mild-to-moderate restriction in range of motion.  Tr. at 47-48, 453, 458-59, 639-40, 644-45, 650-51, 662-63, 667, 681, 693, 699, 705, 718, 731, 737, 743, 749, 854, 901-902, 912-13, 918-19, 924, 943, 1101, 1174-1175, 1177-1178.  The consultative examiner, Dr. Rosenberg, did not assess a sitting limitation because Plaintiff could fully squat, used no assistive devices, needed no help changing for the examination or help getting on/off the exam table, and could rise from a chair without difficulty.  Tr. at 830, 832.  On consultative examination, Plaintiff had mostly full lumbar mobility and a negative straight leg raise.  Tr. at 831.  None of this evidence is consistent with disabling impairments.

Accordingly, Plaintiff has not met her burden of demonstrating that she was unable to perform the physical requirements of the sedentary RFC found by the ALJ.  Tr. at 47-51); *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (holding that "[a] lack of supporting evidence on a matter for which the claimant bears the burden of

proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            February 16, 2022

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**